# Supreme Court—General Term—Third Department.

*December,* 1883.

## PEOPLE *v.* HALE.

VERDICT—WHEN DEEMED AN ACQUITTAL, THOUGH INCONSISTENT.
—TWO VERDICTS.—ASSAULT AND BATTERY—ELEMENTS OF.

Upon the trial of a charge of assault and battery, it appeared that the defendant and the prosecutrix, who were acquaintances and on friendly relations, were walking together upon the street, when the defendant took hold of prosecutrix's arm, the testimony for the prosecution being that this was done with violence, and for the defense, that it was done without violence, and with no intent to injure or insult prosecutrix. The act remained uncomplained of for four months. The jury returned as their verdict, " that while we find the prisoner guilty of an assault, we do not deem him guilty of a criminal assault or intent to injure." The court refused to entertain the verdict, and the jury thereupon found a verdict of guilty with a recommendation to mercy ; whereupon the defendant was sentenced.

*Held,* error ; that the first verdict was, in legal effect, an acquittal, and should have been entertained.

*Further held,* that the taking hold of a person's arm in the confidence of existing friendship, trusting to a license acquired by a supposed mutual kind-feeling, doing no injury, and with no wrongful intent, is not a criminal act.

Appeal from judgment of the Court of Sessions of Rensselaer county, Hon. J. FORSYTH, County Judge, presiding, affirming the judgment of the Police Court of the city of Troy,* wherein the defendant was convicted of the crime of assault and battery, and sentenced to pay a fine of $30, or in default thereof, to be

* In view of the decision in People *v.* Trumble, *ante,* p. 443, that there is nothing in the Code of Criminal Procedure which authorizes an appeal to a Court of Sessions from a judgment rendered by a police justice sitting as such, it may be well to call attention to the fact that the Police Court of the city of Troy has, under the act organizing it, *L.* 1876, c. 18, the same powers as a Court of Special Sessions, in towns. See People *v.* Elliott, 12 *Hun,* 364.

confined at hard labor in the Rensselaer county jail, for the period of sixty days.

The alleged offense was committed on June 24, 1882 ; the complaint was made, and the trial had, four months thereafter. The trial was by jury, and on the rendition of the verdict, the following proceedings were had : " The jury retired and after deliberating, returned into court with the following verdict : 'That while we find the prisoner guilty of assault, we do not deem him guilty of a criminal assault, or intent to injure.' The court refused to entertain the verdict, and directed the jury to again retire.    The jury again returned into court, and rendered a verdict of guilty, and recommended the prisoner to the mercy of the court."    Thereupon the court pronounced judgment as above stated.

Further facts appear in the opinion.

*William H. Hale*, defendant and appellant in person.

*L. W. Rhodes*, district attorney and *Lewis E. Griffith* (assistant), for the people, respondent.    The magistrate did not err in refusing to entertain the verdict as first presented by the jury.

There are only two forms of verdict known to criminal practice : a general verdict, which must be either guilty or not guilty, or a special verdict by which the jury finds the facts alone and leaves the judgment to the court. *Code Crim. Pro.* §§ 437–438.

The magistrate did not err in directing the jury to reconsider their verdict, as it was neither a general or special one.    *Ib.* § 448;  People *v.* Bush, 3 *Park.* 552;  People *v.* Graves, 5 *Ib.* 134 ; Nelson *v.* People, 5 *Ib.* 39.

BOCKES, J.—The point is taken that the first verdict was, in legal effect, a verdict of acquittal, and this, whether it be deemed to be a general or a special verdict ; that in either case, there was an express finding against the commission of a crime, which, in assault and battery, necessarily involves a criminal intent, an intent to commit an act of violence upon another, by way of injury and insult, one or both, productive of a breach of the peace.    The act complained of was the taking hold of the arm

of a young woman, Miss Dewar, when walking in the street with others, her associates, male and female. The defendant and Miss Dewar were acquaintances, and to the time of the occurrence, held friendly relations with each other. Miss Dewar and Mr. Crutchley, with whom she was walking, and who it seems was not on friendly terms with the defendant, testified that the defendant violently seized hold of her arm; whereas two others, disinterested witnesses, who were present, put the act more mildly, saying that they saw him take hold of Miss Dewar's arm; and the defendant, not denying that he took hold of Miss Dewar's arm, testified that "it was not with the intent to assault or insult her," on this proof, the jury rendered their verdict; and it was for the jury to say which version of the transaction should be adopted as the true one. The jury had the right to conclude, especially in view of the former friendly relations which had existed between the defendant and Miss Dewar, undisturbed until Mr. Crutchley came between them, that the defendant simply took hold of Miss Dewar's arm, with no "intent to assault or insult her;" and the jury did so find that the taking hold of Miss Dewar's arm was not a "criminal assault" or with "intent to injure." The verdict was "not guilty of a criminal assault or intent to injure." Was not this verdict a perfect acquittal? If the assault was not criminal, there was no crime. The jury found the defendant not guilty of a criminal assault; that is, they found that the defendant took hold of Miss Dewar's arm, but with no criminal intent. This was good as a special verdict, which need not be in any particular form, if it presents intelligently the facts found by the jury. *Code Crim. Pro.* §.440. It was a finding of the facts. It presented the conclusions of fact as established by the evidence, as construed by the jury. *Code Crim. Pro.* § 438. It was not an imperfect or defective verdict, but covered the entire case; nor did it contain any suggestion of mistake, so People v. Bush (3 *Park.* 552); Nelson. v. People (5 *Ib.* 39); and People v. Graves (5 *Ib.* 134), have no application. The defendant was charged with a criminal act. The jury found that the act on which crime was predicated, was not criminal; and they might so find, if they found the facts to be as claimed and proved on the part of the defendant. What are the con-

stituents of the crime of assault and battery? It has been tersely laid down. as follows : " An act done, with criminal intent and injury to the public or disturbance of the public peace." It should be held in mind that we are considering the case of an alleged crime, not the right of private action for damages because of a trespass upon the person, in which case intention is not material except on the question of damages. Here we are treating with the subject of crime ; so to make the act criminal, it must be committed with criminal intent ; an act—an assault—without such. intent, does not constitute a crime. Greenleaf says, the intention to do harm is of the essence of an assault ; and again, in the case of a mere assault, the *quo animo* is material ; and again, it is said, the law judges not only of the act done, but of the intent with which it is done ; thus, to make an act criminal, there must be vicious intention and criminal design. Infants, idiots, and persons of unsound mind, are held to be irresponsible for their acts, otherwise criminal, because incapable of felonious or criminal intent. Lord KENYON, speaking upon this subject, says the intention and the act must both concur to constitute the crime. In Hays *v.* People (1 *Hill,* 351), the intent was looked upon as necessary to the offense ; so it is said in *Russell on Crimes,* that whether the act shall amount to an assault, must in every case be collected from the intention, citing the remark approvingly that it is the *quo animo* which constituted an assault, which was a matter to be left to the jury, as above suggested. We are here considering the subject in its criminal aspect, not as in personal actions of trespass *vi et armis.* Then has a crime been committed ? Was there culpability, vicious intention, criminal design, designed disturbance of the public peace ? The jury found, and so rendered their verdict, that the defendant was not guilty in this regard—that the act complained of was not a criminal act, did not involve any element essential to crime. They had the right to find, if they deemed the facts proved to justify the finding, that the taking hold a person's arm, in the confidence of existing friendship, trusting to a license acquired by a supposed mutual kind feeling, doing no injury, with no intent to do a wrong, by insult or otherwise, is not a criminal act. Such an act is an innocent one, in the sense that it does not constitute a crime. It is, too, of some

significance, as bearing on the legal views above expressed, that the act remained uncomplained of for four months, and, as counsel stated on the argument—and this was not disputed,—until after trouble had arisen between the defendant and Crutchley, with whom Miss Dewar was walking at the time of the occurrence.

Again, the record, as it now stands, presents a strange anomaly. It contains two verdicts, one not guilty; the other, guilty. The first verdict was not taken back by the jury; nor was the second one an amendment of the first. Each was perfect of itself, not defective or suggestive of mistake; the first, being complete of itself, and declaring that the act complained of was not criminal, that the defendant was not guilty of crime in doing it,—should have been accepted as final. It follows that the judgment pronounced by the police court was erroneous. This conclusion renders it unnecessary to examine other questions raised on the appeal.

The judgment of the Rensselaer Sessions and of the police court should be reversed, and the defendant discharged.

LEARNED, J.—[Concurring.]—Simply to find the prisoner guilty of assault, was to find him guilty of a criminal intent, simply to find him not guilty of a criminal assault was to acquit him. The difficulty is to say what the jury meant by their verdict, inconsistent on its face. If they meant to acquit, then it was error not to entertain the verdict, and to direct the jury again to retire. If it had been explained to them that, on this criminal prosecution, there could be no assault without an intent to injure, then they might have stated what they intended (3 *Green. Ev.* 361); but this was not done, so far as appears, as they distinctly found that there was no criminal assault and no intent to injure. I am, on the whole, of the opinion that by the words "guilty of assault," they must have meant simply that the defendant, as he himself stated, took hold of the prosecutrix. I think that they must have believed that any such taking hold of another person, without regard to the intent, was an assault. There is much in this case which renders this view probable, as is shown in the preceding opinion of my brother BOCKES. The evidence fully justified the conclusion that there

was no assault; and if the jury so found, their verdict appears to be just and proper.

Although the matter is not free from doubt, I conclude that the verdict first rendered was practically a verdict of acquittal, and I concur in the foregoing opinion.

BOARDMAN, J., concurred in the result.